UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

SABRINA D. REYNOLDS,              :    CHAPTER 13
     DEBTOR                    :    CASE NO. 18-21494


DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR HOME
EQUITY MORTGAGE LOAN ASSET-
BACKED TRUST, SERIES SPMD 2001-A,
HOME EQUITY MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES
SPMD 2001-A
     MOVANT


VS.
                            :    03/28/2019

SABRINA D. REYNOLDS,
     DEBTOR
ROBERTA NAPOLITANO, TRUSTEE
     RESPONDENTS


## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

The undersigned Movant, DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for

HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A,

HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-

A ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic

stay with respect to certain real property of Sabrina D. Reynolds ("Debtor") having an address of 48

Daniel Boulevard, Bloomfield, Connecticut 06002 ("Property").  In further support of this Motion,

Movant respectfully states:

      1.   The Debtor, Sabrina D. Reynolds, has executed and delivered or is otherwise

           obligated with respect to that certain promissory note in the original principal amount

           of $103,500.00 ("Note").  A copy of the Note is attached hereto as Exhibit "A".

Movant is an entity entitled to enforce the Note and the Mortgage (defined below).

2. Pursuant to that certain Open-End Mortgage ("Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property.  A copy of the Mortgage is attached hereto as Exhibit "B".

3. The Mortgage has been assigned to the Movant pursuant to that certain assignments of mortgage, copies of which are attached hereto as Exhibit "C".

4. Ocwen Loan Servicing, LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A.  At the time of the filing of this Motion, said entity, directly or through an agent, has possession of the promissory note.  The Note is proven through a lost note affidavit.  The Movant therefore has standing.

5. The Debtor  has defaulted in payments and/or failed to pay any/all post-petition payments due required by the mortgage note as set forth in the attached Motion for Relief from Stay Worksheet (including any additional payments that have since become due), which is incorporated into this Motion by reference and attached hereto.

6. As set forth in the attached Relief from Stay Worksheet – Real Estate:

    (a) Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic

stay for the following reasons:

    1)   The Debtor is contractually delinquent with payments and the non-payment is insufficient to protect Movant's interest.

    (b) Pursuant to 11 U.S.C. §362(d)(2), there is no equity in the property and such property is not necessary for an effective reorganization.

7.   The Movant further requests that upon entry of an order granting relief from stay, such order deem the Debtor's plan modified to no longer provide for the payment of Movant's claim pursuant to Section 1322(b)(5) and that the Trustee shall cease funding the Movant's claim under further notice from the Court and that upon such order entering that the Notice requirements set forth under Bankruptcy Rule 3002.1 no longer be applicable.

8.   To the extent that there exists a co-debtor stay under 11 U.S.C. §1301(a), the Movant requests that the same be modified, as to the Movant, to allow the Movant to foreclose its mortgage on the subject premises.

9.   A foreclosure action was commenced on January 16, 2018 and a Judgment of Foreclosure entered on June 19, 2018.

10.  That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived because:

    (a)  a Judgment of Strict Foreclosure was entered on June 19, 2018, attached hereto as Exhibit "D".

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay allowing Movant and any successors or assign to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain

possession of the Property.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.  The Movant further requests that upon entry of an order granting relief from stay, such order deem the Debtor's plan modified to no longer provide for the payment of Movant's claim pursuant to Section 1322(b)(5) and that the Trustee shall cease funding the Movant's claim under further notice from the Court and that upon such order entering that the Notice requirements set forth under Bankruptcy Rule 3002.1 no longer be applicable.

3.      Further, to the extent that there exists a co-debtor stay under 11 U.S.C. §1301(a), the Movant requests that the same be modified, as to the Movant, to allow the Movant to foreclose its mortgage on the subject premises.

4.      For such other relief as the Court deems proper.

Dated at Hartford, Connecticut this  28th  day of    March          , 2019.

Dated:      03/28/2019          By:  */s/ Linda  St. Pierre*
Linda  St. Pierre, Esq.
McCalla Raymer Leibert Pierce, LLC
50 Weston St.
Hartford, CT  06120
Phone: (860) 808-0606
Federal Bar No.: Connecticut CT22287

**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

SABRINA D. REYNOLDS,           :   CHAPTER 13
    DEBTOR                :   CASE NO. 18-21494

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR HOME
EQUITY MORTGAGE LOAN ASSET-
BACKED TRUST, SERIES SPMD 2001-A,
HOME EQUITY MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES
SPMD 2001-A
    MOVANT

VS.

                          :   _____

SABRINA D. REYNOLDS,
    DEBTOR
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

PROPOSED ORDER GRANTING DEUTSCHE BANK NATIONAL TRUST COMPANY AS
TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD
2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES
SPMD 2001-A RELIEF FROM STAY

After notice and a hearing, *see* Bankruptcy Code Section 102(1), on DEUTSCHE BANK

NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN

ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN

ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A (hereafter the "Movant") Motion

for Relief from Stay, (hereafter, the "Motion"), RE: ECF NO._____.

**IT IS HEREBY ORDERED** that the Motion is Granted - the Automatic Stay of 11

U.S.C. § 362(a) is modified to permit the Movant and/or its successors and assigns to commence

and/or continue and prosecute to resolution a foreclosure action and otherwise exercise its rights,

if any with respect to real property known as 48 Daniel Boulevard, Bloomfield, Connecticut 06002 in accordance with applicable state law;

**IT IS FURTHER ORDERED** that the 14 day stay of Fed.R.Bankr.P. 4001(a)(3) is not applicable and the Movant may immediately enforce and implement this Order.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| SABRINA D. REYNOLDS, | : | CHAPTER 13 |
| DEBTOR | : | CASE NO. 18-21494 |

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR HOME
EQUITY MORTGAGE LOAN ASSET-
BACKED TRUST, SERIES SPMD 2001-A,
HOME EQUITY MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES
SPMD 2001-A
    MOVANT

VS.

                            :    03/28/2019

SABRINA D. REYNOLDS,
    DEBTOR
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

NOTICE OF CONTESTED MATTER RESPONSE DEADLINE

DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A (the "Movant") has filed a Motion for Relief from Automatic Stay (the "Contested Matter") in the above-captioned case.  Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than  April 11, 2019 , in accordance with Federal Rules of Bankruptcy Procedure 2002(a) and 9014*.  In the absence of a timely filed response, the proposed order in the Contested Matter *may* enter without further notice and hearing, see, 11 U.S.C. §102(1).

Dated:   03/28/2019

By:  */s/ Linda  St. Pierre*
      Linda  St. Pierre, Esq.
      McCalla Raymer Leibert Pierce, LLC
      50 Weston St.
      Hartford, CT  06120
      Phone: (860) 808-0606
      Federal Bar No.: Connecticut CT 22287

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

SABRINA D. REYNOLDS,           :    CHAPTER 13
    DEBTOR                 :    CASE NO. 18-21494

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR HOME
EQUITY MORTGAGE LOAN ASSET-
BACKED TRUST, SERIES SPMD 2001-A,
HOME EQUITY MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES
SPMD 2001-A
    MOVANT

VS.
                         :    03/28/2019

SABRINA D. REYNOLDS,
    DEBTOR
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

**<u>NOTICE OF CONTESTED MATTER RESPONSE DEADLINE CERTIFICATION</u>**

        The undersigned hereby certifies that on the  28th  day of ___March_____, 2019 in accordance with applicable law, I served the following documents upon the entities listed below (constituting all entities entitled to notice):

    (1)  a copy of the pleading initiating the contested matter, specifically:

          Motion for Relief from Stay;

    (2)  a copy of the Proposed Order associated therewith; and

    (3)  a Notice of Contested Matter Response Deadline

Sabrina D. Reynolds
48 Daniel Blvd.
Bloomfield, CT 06002
(Debtor)

Gregory F. Arcaro               *(served via ECF Notification)*

Grafstein & Arcaro LLC
114 West Main Street
Suite 105
New Britain, CT 06051
(Debtor's Attorney)

Roberta Napolitano                    *(served via ECF Notification)*
10 Columbus Boulevard
6th Floor
Hartford, CT 06106
(Trustee)

U.S. Trustee                          *(served via ECF Notification)*
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
(U.S. Trustee)


By:  */s/ Linda  St. Pierre*
     Linda  St. Pierre, Esq.
     McCalla Raymer Leibert Pierce, LLC
     50 Weston St.
     Hartford, CT  06120
     Phone: (860) 808-0606
     Federal Bar No.: Connecticut CT22287

Connecticut Local Form Relief From Stay Worksheet-Real Estate                                                    (01/09/2019)

# RELIEF FROM STAY WORKSHEET-REAL ESTATE

I        Javier Rivera    Contract Management Coordinator

(Name and Title)

of Ocwen Loan Servicing, LLC as servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A

(Name of Organization/Corporation/ Moving Party) (hereinafter, "Movant") hereby declare (or certify, verify, or state) as follows:

## BACKGROUND INFORMATION

1.    Real property address which is the subject of this motion:

    48 Daniel Boulevard, Bloomfield, Connecticut 06002

2.    Servicer Name:  Ocwen Loan Servicing, LLC

3.    Date of Mortgage: 01/19/2001

4.    Post-Petition payment address:  Ocwen Loan Servicing, LLC Attention: Cashiering Department 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409

5.    The manner in which the movant perfected its interest in the property:

    Recorded Open-End Mortgage

6.    All other material liens and encumbrances on the property:

    $16,725.52- pursuant to Debtor's Schedule D

## DEBT/VALUE REPRESENTATIONS

7.    Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $  225,640.99 *Estimated amounts owed as March 11, 2019

8.    Movant's estimated market value of the real property: $   115,000.00

9.    Source of estimated valuation:    Exhibit D- Fair Market Value

## STATUS OF DEBT AS OF THE PETITION DATE  9/12/2018

10.    Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: **$220,122.66**

    A. Amount of principal: $  104,200.02  + $73,689.21 deferred UPB = $177,889.23

    B. Amount of interest: $  16,249.89

    C. Amount of escrow (taxes and insurance): $  20,784.12

    D. Amount of forced placed insurance expended by Movant: $  Included in above 10 (C)

    E. Amount of Attorney's fees billed to Debtor(s) pre-petition: $  Included in  fees, costs in below # 12

    F. Amount of pre-petition late fees, if any, billed to Debtor(s): $  Included in  fees, costs in below # 12

11. Contractual interest rate as of the date of the petition: 4.125%

(If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

N/A

12. Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:

Fees, costs due: $5,242.12; Less total funds on hand : $42.70

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

N/A

## AMOUNT OF ALLEGED POST -PETITION DEFAULT (AS OF 3/11/2019)

13. Date last payment was received: 10/27/2018 _____ (mm/dd/yyyy)

14. Alleged total number of payments post-petition from filing of petition through payment due on

(mm/dd/yyyy): 3/1/19; Six (6) _____

15. List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| 10/1/18-3/1/19 | $ 978.34 |
| Totals: | $ 5,870.04 |

### SCHEDULE OF PAYMENTS RECEIVED:    SEE EXHIBIT 1

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount Applied to Legal Fees or Costs (specify) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |
| Totals: | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $ 850.00

17. Amount of Movant's filing fee for this motion: $  181.00

18. Only to the extent the movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition:

$  2,582.50 pursuant to the fee notice filed 2/27/2019

19. Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees:

$  0.00

Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion:

$  0.00

20. Only to the extent the movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition:

$ 0.00

21. Only to the extent the movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable:

$ 887.28

22. Only to the extent the movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.:

$ 0.00

23. Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

| $ 0.00 | Date:  n/a |
|--------|------------|

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested.

1. Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party.  **EXHIBITS A-D**

2. Copies of documents establishing proof of standing to bring this Motion.  **EXHIBITS A-D**

3. Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information.    **EXHIBITS A-D**

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows:  Bendett & McHugh, P.C. is currently in physical possession of the original LNA & certified copy of mortgage.

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on __March 25, 2019__ [date]

_Javier Rivera_
[signature]

Javier Rivera
Contract Management Coordinator

[title] of Ocwen Loan Servicing, LLC as servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A

[servicer]

STATE OF FLORIDA
COUNTY OF PALM BEACH
The foregoing instrument was acknowledged before me this _25_ day of _March_, 20 _19_, by _Javier Rivera_ as _Contract Management Coordinator_ for Ocwen Loan Servicing, LLC who is the servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A, who is personally known to me or who has produced _____ as identification.

Signature of Notary Public _____
Name of Notary Public: __Marilyn Solivan__

Personally known: __✓__
OR Produced Identification: _____
Type of Identification Produced: _____

Notary Public State of Florida
Marilyn Solivan
My Commission FF 987302
Expires 04/28/2020

Exhibit 3

| Name: | Sabrina D. Reynolds |
|---|---|
| BK Case Number: | 18-21494 |
| Filing Date: | 9/12/2018 |
| Completed by: | Peddanna |

| Due Date | Total Payment | | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|---|
| 10/1/2018 | $ | 978.34 | $ 101.19 | $ 343.71 | $ 533.44 | | |
| 11/1/2018 | $ | 978.34 | $ 101.54 | $ 343.36 | $ 533.44 | | |
| 12/1/2018 | $ | 978.34 | $ 101.89 | $ 343.01 | $ 533.44 | | |
| 1/1/2019 | $ | 978.34 | $ 102.24 | $ 342.66 | $ 533.44 | | |
| 2/1/2019 | $ | 978.34 | $ 102.59 | $ 342.31 | $ 533.44 | | |
| 3/1/2019 | $ | 978.34 | $ 102.94 | $ 341.96 | $ 533.44 | | |
| Total Due | $ | 5,870.04 | $ 612.39 | $ 2,057.01 | $ 3,200.64 | $ - | |

| Name: | Sabrina D. Reynolds | | | | | |
|---|---|---|---|---|---|---|
| BK Case Number: | 18-21494 | | | | | |
| Filing Date: | 9/12/2018 | | | | | |
| Post First Due: | 10/1/2018 | | | Completed By: | Peddanna | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
| | 10/27/2018 | $ 887.28 | | $ 887.28 | $ 887.28 | |



**LOST NOTE AFFIDAVIT**

EXHIBIT A

STATE OF FLORIDA
COUNTY OF PALM BEACH

BEFORE me, personally appeared Mirna Willcox who, being of lawful age and after being first duly sworn, deposes and says:

1. I am an Authorized Signer of Ocwen Loan Servicing, LLC ("Ocwen"), servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A, Plaintiff in this action. In this capacity I have personal knowledge of the facts and matters stated herein based on my review of the business records defined below, and I am authorized to execute this Affidavit on behalf of Ocwen.

2. The information contained in this affidavit is based on my personal knowledge from my review of the information contained in the records maintained by Ocwen. The records referenced or summarized herein constitute records or data compilations ("the Records") of transactions ("the Transactions") relating to the servicing of the mortgage loan at issue in this foreclosure action. The Records were made at or near the indicated time based on information transmitted by, or from a person with knowledge of the Transactions. The Records are kept in the course of Ocwen's regularly conducted business activity. In the course of my regular job duties I have access to and am familiar with these Records, and I reviewed and relied upon these Records in executing this Affidavit.

3. This Lost Note Affidavit is made in connection with a promissory note ("Note"), dated January 19, 2001 in which Sabrina D. Reynolds ("Borrower") promised to pay to IndyMac Bank, F.S.B. a federally chartered savings bank the sum of $103,500.00 (the "Loan"). A true and correct copy of the Note is attached hereto as Exhibit A.

4. The Note was then endorsed to blank. A true and correct copy of all allonges and endorsements on the Note are attached as part of Exhibit A.

5. According to the Records attached hereto as Exhibit B, Plaintiff was in possession of the Note when loss of possession occurred.

6. According to the Records, on 10/17/2017 a diligent search for the original Note was conducted. After conducting the search, the original Note could not be located and Plaintiff cannot reasonably obtain possession of the original Note.

7. The original Note has been inadvertently lost, misplaced, or destroyed, or is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

8. The original Note is not in the custody and control of the Plaintiff.

9. According to the Records, the Note has not been paid, satisfied, pledged, transferred or lawfully seized.

10. Plaintiff hereby agrees to indemnify Borrowers against loss that might occur by reason of a claim by another person to enforce or foreclose under the Note.

Under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true and correct.

Dated: ___OCT 1 9 2017___

Signature: _____

Print Name: Mirna Willcox

Title: Authorized Signer

Ocwen Loan Servicing, LLC, as servicer for

DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES SPMD 2001-A, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES SPMD 2001-A

STATE OF FLORIDA
COUNTY OF PALM BEACH

This record was signed or attested before me this 19th day of October 2017, by Mirna Willcox, who is personally known to me.

_____
Signature of Notary Public

**Kettia Nesbitt**

Notary Public State of Florida
Kettia Nesbitt
My Commission FF 996062
Expires 05/25/2020

Disclosure Date:January 19, 2001   Generated: 1/18/2001 10:04 AM   Printed by the ▮ IndyMac Doc Prep System on 01/18/2001 1:20:25 PM

# NOTE

**January 19, 2001**                              **ROCKY HILL**                              **CT**
     [Date]                              [City]                              [State]

**48 Daniel Boulevard, Bloomfield, CT 06002**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $  **103,500.00**                 (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is **IndyMac Bank, F.S.B.**
**a federally chartered savings bank**
. I understand
that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive
payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly
rate of      **9.625** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **1st**      day of each month beginning on   **March 1**                 ,
**2001**       . I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
**February 1, 2031**               , I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 78826, PHOENIX, AZ 85062-8806**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    **879.74**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a
"prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all
of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be
no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan
charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected
from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by
reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction
will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**         calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           **5.000** % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
                    Form 3200 12/83
⦿ -5R (9105)05          Amended 5/91

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2                Initials



Disclosure Date:January 19, 2001          Generated: 1/15/2001 10:04 AM          Printed by the  FreddyMac Doc Prep System on01/15/2001 1 20:25 PM

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | |
|---|---|---|
| _Sabrina D. Reynolds_ (Seal) -Borrower | PAY TO THE ORDER OF | (Seal) -Borrower |
| | SSN: | |
| SSN: | WITHOUT RECOURSE (Seal) -Borrower | |
| _Wendella [Auly Battey, witness_ (Seal) -Borrower | INDYMAC BANK, F.S.B. _Patrick G. White_ | |
| SSN: | SSN: PATRICK J. WHITE VICE PRESIDENT | [Sign Original Only] |

**VOL 0889 PG 194**

AFTER RECORDING
RETURN TO:

Indymac Bank, F.S.B.
3000 Atrium Way, Suite 420
Mt. Laurel, NJ  08054

EXHIBIT B

——————————— [Space Above This Line For Recording Data] ———————————

# OPEN-END MORTGAGE

Return To:
IndyMac Bank, F.S.B.

155 N Lake Ave, Pasadena, CA 91101
Attn:Document Management

■■■■■■■■■■■■■■

   THIS MORTGAGE ("Security Instrument") is given on **January 19, 2001**          . The mortgagor is
**SABRINA D. REYNOLDS**

("Borrower"). This Security Instrument is given to  **IndyMac Bank, F.S.B.**
**a federally chartered savings bank**

which is organized and existing under the laws of **United States of America**              , and whose
address is **155 N Lake Ave , Pasadena, CA 91101**
                                        ("Lender"). Borrower owes Lender the principal sum of
**One hundred three thousand five hundred and 00/100**
                                        Dollars (U.S. **$103,500.00**             ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **February 1, 2031**              .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to
Lender and Lender's successors and assigns the following described property located in **Hartford**
                                        County, Connecticut:

**SEE ATTACHED** LEGAL DESCRIPTION

which has the address of **48 Daniel Boulevard, Bloomfield**                           [Street, City].
**Connecticut 06002**                      [Zip Code] ("Property Address"):
CONNECTICUT-Single Family-FNMA/FHLMC
  UNIFORM INSTRUMENT   Form 3007 9/90
[logo]  6H(CT) (9403)03       Amended 12/93
      VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                       Initials:

## VOL 0889 PG 195

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

16H(CT) (9403) 03          Page 2 of 6          Loan Number: ▇▇▇▇▇          Form 3007 5/90
                                                                               Initials: ▇▇

VOL 0889 PG 196

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Loan Number: ▮▮▮▮▮▮▮

VMP ▮6H(CT) (9403) 03

Page 3 of 6

Form 3007 9/90

Initials: ▮▮▮

VOL 0889 PG 197

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

6H(CT) (9403) 03                     Page 4 of 6                                        Form 3007   3/90

Initials

## VOL 0889 PG 198

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

VOL 0889 PG 199

## SCHEDULE  A

All that certain piece or parcel of land, together with the buildings and improvements thereon, located in the Town of Bloomfield, County of Hartford and State of Connecticut, known as No. 48 Daniel Boulevard and also known as Lot No. 24 on a map entitled "Wintonbury Hill Subdivision Bloomfield, Connecticut Property of Frank Rubino & Sons, Inc. Scale 1" = 60' November 2, 1951 Harold R. Sanderson C.E. & L.S.", which map is on file in the Town Clerk's Office in the said Town of Bloomfield to which reference may be had, said premises being more particularly bounded and described as follows:

NORTHERLY:     by land now or formerly of Louis Sclar et al, Lot No. 25 on said map, One Hundred Sixty (160) feet;

EASTERLY:     by Daniel Boulevard, Seventy-Five (75) feet;

SOUTHERLY:     by land now or formerly of Howard H. Hiltzik et al, Lot No. 23 on said map, One Hundred Sixty (160) feet; and

WESTERLY:     by land now or formerly of Frank Rubino & Sons, Incorporated, Seventy-Five (75) feet.

### VOL 0889 PG 200

**22. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify] PREPAYMENT AND MORTGAGE INS. R | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____ (Seal)
Sabrina D. Reynolds                              -Borrower

Wendella Ault Battey

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                                  -Borrower

**STATE OF CONNECTICUT,**          Hartford                    County ss:   Rocky Hill

The foregoing instrument was acknowledged before me this   19th day of January, 2001
                                                                              (date)
by **Sabrina D. Reynolds**
                                         (person acknowledging)

My Commission Expires:

_____
Commissioner of the Superior Court
                    Notary Public
                    Wendella Ault Battey

(Official Seal)

VOL 0889 PG 201

# MORTGAGE INSURANCE RIDER

This Mortgage Insurance Rider is made this 19th               day of **January 2001**                .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's  **Fixed Rate**  .
[identify type of note, e.g. fixed rate] note (the "Note") to **IndyMac Bank, F.S.B.**
**a federally chartered savings bank**
                                                    ("Lender") of the same date and covering the Property
described in the Security Instrument and located at:
                    **48 Daniel Boulevard, Bloomfield, CT 06002**

                              [Property Address]

The Security Instrument is amended by adding the following at the end of Section 10 (if the Security
Instrument has a form date at the lower right corner of 3/99 or later) or Section 8 (if the Security
Instrument has a form date at the lower right corner that is earlier than 3/99):

> Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses
> it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the
> Mortgage Insurance.
>
> Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and
> may enter into agreements with other parties that share or modify their risk, or reduce losses.
> These agreements are on terms and conditions that are satisfactory to the mortgage insurer and
> the other party (or parties) to these agreements. These agreements may require the mortgage
> insurer to make payments using any source of funds that the mortgage insurer may have
> available (which may include funds obtained from Mortgage Insurance premiums).
>
> As a result of these agreements, Lender, any purchaser of the Note, another insurer, any
> reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or
> indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's
> payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's

**Multistate Mortgage Insurance Rider-Single Family-Fannie Mae Uniform Instrument**

 1R (0004)          Form 3160 4/00
Page 1 of 3          Initials:
VMP MORTGAGE FORMS - (800)521-7291

VOL 0 8 8 9 PG 2 0 2

risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(B) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11R (0004)                    Page 2 of 3          Initials: _____          Form 3160 4/00

VOL 0889 PG 203

By signing below, Borrower accepts this Mortgage Insurance Rider and agrees that it amends and supplements the Security Instrument.

_____ (Seal)        _____ (Seal)
Sabrina D. Reynolds     -Borrower                             -Borrower


_____ (Seal)        _____ (Seal)
                      -Borrower                             -Borrower


_____ (Seal)        _____ (Seal)
                      -Borrower                             -Borrower


_____ (Seal)        _____ (Seal)
                      -Borrower                             -Borrower


11R (0004)                     Page 3 of 3                    Form 3160 4/00

VOL 0889 PG 204

## PREPAYMENT RIDER

THIS RIDER is made this 19th           day of January         , 2001       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to IndyMac Bank, F.S.B.
a federally chartered savings bank
of the same date and covering the Property described in the Security Instrument and located at:

48 Daniel Boulevard, Bloomfield, CT 06002

[Property Address]

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. If within the first three           ( 3        ) year(s), I may make a partial prepayment or partial prepayments of less than twenty percent (20%) of the original principal amount in a twelve month period, I will not pay a prepayment penalty. However, if within the first three              ( 3           ) year(s), I may make a full, partial prepayment or partial prepayments of more than twenty percent (20%) of the original principal amount in a twelve month period, I will

Subprime Prepayment (1-5 yrs) Rider
(AZ, AR, CA, CO, CT, DE, FL, GA, HI, ID, IN, KY, LA, MT,
ND, NE, NV, NH, NY, OK, SD, TN, UT, WA, WY,
TX (fixed rates only, int rate cannot exceed 12%))

Page 1 of 2
ELECTRONIC LASER FORMS, INC. - (800)327-0545

SPD #001
(09/17/99)

VOL 0889 PG 205

pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount in that twelve month period.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____(Seal)     _____(Seal)
Sabrina D. Reynolds      -Borrower                              -Borrower

_____(Seal)     _____(Seal)
                         -Borrower                              -Borrower

_____(Seal)     _____(Seal)
                         -Borrower                              -Borrower

_____(Seal)     _____(Seal)
                         -Borrower                              -Borrower

Subprime Prepayment (1-5 yrs) Rider
(AZ, AR, CA, CO, CT, DE, FL, GA, HI, ID, IN, KY, LA, MT,
ND, NE, NV, NH, NY, OK, SD, TN, UT, WA, WY,
TX (fixed rates only, int rate cannot exceed 12%))

Page 2 of 2

SPD #001
(09/17/99)

Received for record    January 25, 2001

at  9:05 AM   Marguerite Phillips

Town Clerk of Bloomfield

# EXHIBIT C

## ASSIGNMENT OF MORTGAGE

POOL NUMBER_____                    ███████████████████████

KNOW YE THAT **IndyMac Bank F.S.B., ("Assignor"),** having an office and place of business at 155 North Lake Avenue, Pasadena, CA 91101 for the consideration of One Dollar and other valuable considerations, does hereby assign to **Deutsche Bank National Trust Company as Trustee under the pooling and Servicing Agreement Series ITF SPMD 2001 A, ("Assignee")** having an address of c/o IndyMac Bank, 155 North Lake Avenue, Pasadena, CA 91101, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Sabrina D. Reynolds to IndyMac Bank, F.S.B. dated January 19, 2001 and recorded on January 25, 2001 in Volume 889 at Page 194 of the Bloomfield Land Records , in or to the property described in said mortgage deed situated in the Town of Bloomfield, County of Hartford and State of Connecticut, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee, its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the __16__ day of July, 2007, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by __Erica Johnson-Seck__, who is duly authorized and empowered.

Signed, sealed and delivered                    INDYMAC BANK F.S.B.
In the presence of:

_~~signature~~_                                 By _~~signature~~_
_ALAN Conine_                                        _Erica Johnson-Seck_
**Vice President**                              Its _Vice President_

STATE OF TEXAS :
                                                : ss.
COUNTY OF WILLIAMSON        :

On this __16__ day of July, 2007, before me personally came _Erica Johnson-Seck_ to me known, who being by me duly sworn, did depose and say that he/she is a Vice President of INDYMAC BANK F.S.B., which executed the above instrument: that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

_~~signature~~_                  ╔═══════════════════╗
_Vicki Brizendine_               ║ ★ VICKI BRIZENDINE ║
Notary Public  VICKI BRIZENDINE  ║ Notary Public, State of Texas ║
My Commission Expires: 6-15-11   ║ My Commission Expires ║
                                 ║ June 15, 2011 ║
                                 ╚═══════════════════╝

**PROPERTY:**                          Recorded in Bloomfield
48 Daniel Boulevard                    LAND RECORDS
Bloomfield, CT 06002                   Jul 25,2007 10:23A
Reynolds, Sabrina D                    BOOK: 1432 PAGE: 122
File 02483-70570                       INST# 00003433
                                       Marguerite Phillips  Town Clerk

**THIS LAW FIRM IS A DEBT COLLECTOR. ANY**
**INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



Recorded in Bloomfield
LAND RECORDS
Nov 06,2013  11:04A
BOOK: 1754 PAGE:  152
INST# 00004546
Marguerite Phillips  Town Clerk

## ASSIGNMENT OF MORTGAGE
### CONNECTICUT

This **ASSIGNMENT OF MORTGAGE** is made and entered into as of this _____ OCT 01 2013 ____, 2013 from Deutsche Bank National Trust Company as Trustee under the pooling and Servicing Agreement Series ITF SPMD 2001 A, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705 ("Assignor") to Deutsche Bank National Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2001-A, Home Equity Mortgage Loan Asset-Backed Certificates, Series SPMD 2001-A under the Pooling and Servicing Agreement dated February 1, 2001, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Land Records for the City/Town of Bloomfield, State of Connecticut, as follows;

Mortgagor: **Sabrina D. Reynolds**
Mortgagee: **IndyMac Bank, FSB**
Document Date: **January 19, 2001**
Recording Date: **January 25, 2001**
Book/Volume/Docket/Liber: **889**
Page/Folio: **194**
Property address: **48 Daniel Boulevard, Bloomfield, CT 06002**
Property described as follows:

### FOR A COMPLETE LEGAL DESCRIPTION SEE ABOVE REFERENCED RECORDED MORTGAGE

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney`s fees and all other charges.

This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF the Assignor has caused these presents to be executed in its name by its proper officer thereunto duly authorized, the _____ OCT 01 2013 _____, 2013.

Signed, sealed and delivered in the presence of:

Deutsche Bank National Trust Company as Trustee under the pooling and Servicing Agreement Series ITF SPMD 2001 A

(1) _____
    Witness    Mary A. Fulton

(2) _____
    Witness    **Carla Smith**

STATE OF _____ **TEXAS** ___ )
                               ) ss.
COUNTY OF _____ **TRAVIS** ___ )

BY: _____
    Name:      **Lisa C. Payne**
               **Attorney In Fact**
Title: _____

**Lisa C. Payne**

In _____ OCT 01 2013 day of _____, 2013, before me personally appeared _____, the Authorized Representative of Deutsche Bank National Trust Company as Trustee under the pooling and Servicing Agreement Series ITF SPMD 2001 A, to me known and known by me to be the party executing the foregoing instrument, and he/she acknowledged said instrument by him/her executed to be his/her free act and deed, and the free act and deed of Deutsche Bank National Trust Company as Trustee under the pooling and Servicing Agreement Series ITF SPMD 2001 A.

_____
Notary Public
Name: _____ **Emily Butler**
My commission Expires: __8-8-17__

**EMILY BUTLER**
Notary Public, State of Texas
My Commission Expires
August 08, 2017


*Ocwen Loan Servicing, LLC*
*P.O. Box 24737*
*West Palm Beach, Florida 33416-4737*
*(Do not send correspondence or payments to the above address.)*          WWW.OCWEN.COM

## Helping Homeowners Is What We Do! ™

Friday, December 19, 2014

Sabrina D Reynolds
48 Daniel Blvd
Bloomfield, CT 06002

**Your executed Home Affordable Modification Agreement!**

Re:

Property Address:  48 Daniel Blvd | Bloomfield, CT 06002

Dear Borrower(s):

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Home Affordable Modification Agreement.

Included with this letter is an executed copy of your Home Affordable Modification Agreement to keep for your records.

If you have any questions regarding your Home Affordable Modification Agreement, please call our Customer Care Center at (800) 746-2936 Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 12:00 pm to 9:00 pm ET, and remember **"Helping Homeowners is what we do!"**

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

-BD-PRA

Investor Loan # _____
**After Recording Return To:**

_____
_____
_____

This document was prepared by _____
_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Sabrina D Reynolds**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **1/19/2001**

Loan Number: ▇▇▇▇▇▇▇

Property Address: **48 Daniel Blvd Bloomfield, CT 06002** ("Property")
*[and Legal Description if recordation is necessary]*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

OL▇▇▇▇▇▇▇

-BD-PRA

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/1/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 11/1/2014.

A. The new Maturity Date will be: 4/1/2031, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $178,189.21 (the "New Principal Balance").

C. $73,689.21 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $73,689.21 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 8/1/2014, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $104,500.00. Interest at the rate of 4.12500% will begin to accrue on the Interest Bearing Principal Balance as of 10/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 11/1/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 4.12500% | 10/1/2014 | $444.90 | $512.40, adjusts annually after year 1 | $957.30, adjusts annually after year 1 | 11/1/2014 | 198 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

OLS Form (rev. 1/13)

-BD-PRA

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.   If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements**. I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

OLS Form (rev. 1/13)

-BD-PRA

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.  That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.  That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.  If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.  That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.  Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.  Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026  Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

OLS Form (rev. 1/13)

-BD-PRA

[ ]  *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____  10 / 30 / 14  Date
              Sabrina D Reynolds

State of <u>Connecticut</u>)

County of _____ )

On _____ before me, _____ personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _Sabrina D Reynolds_

Commission expiration date ___/___/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Sign Here→ _____  10 / 30 / 14  Date

State of <u>Connecticut</u>)

County of _____ )

On _____ before me, _____ personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _Sabrina D Reynolds_

Commission expiration date___/___/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

OLS Form (rev. 1/13)

·BD-PRA

All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____   10 /30/ 1[     Date

State of <u>Connecticut</u>)

County of _____)

On _____ before   me, _____ personally   appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Sign Here→ _____   ___/___/_____   Date

State of <u>Connecticut</u>)

County of _____)

On _____ before   me, _____ personally   appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Servicer   DEC 1 9 2014 _____        BY _____
Date                                            **April Alston**
If applicable: _____             **Authorized Officer**

Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Page 6 of 8

OLS Form (rev. 1/13)

████████████████                                                    -BD-PRA

### BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Sabrina D Reynolds

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number: ████████

Property Address: 48 Daniel Blvd Bloomfield, CT 06002

THIS BALLOON PAYMENT DISCLOSURE is made this 18 day of September, 2014, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of $24,563.07 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 11/1/2014 up to 8/1/2015 | $153,940.18 - NO ADJUSTMENT |
| 8/1/2015 up to 8/1/2016 | $129,377.11 |
| 8/1/2016 up to 8/1/2017 | $104,814.04 |
| 8/1/2017 up to 4/1/2031 | $80,250.97 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $80,250.97 WILL BE DUE AND PAYABLE IN FULL ON 4/1/2031, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 198 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

OLS Form (rev. 1/13)

████████████████

-BD-PRA

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT.  THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

_____          SIGN →          __10 | 30 | 14___
Borrower                                             Date

_____          SIGN →          __10 / 30 / 14___
Borrower                                             Date

OLS

ORDER    406507

DOCKET NO: HHDCV186087690S

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FO
   V.
REYNOLDS, SABRINA D

SUPERIOR COURT

JUDICIAL DISTRICT OF HARTFORD
     AT HARTFORD

6/19/2018

ORDER

ORDER REGARDING:
03/02/2018 108.00 MOTION FOR JUDGMENT-STRICT FORECLOSURE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

MOTION FOR STRICT FORECLOSURE IS GRANTED
Debt:$ 210,134.42
Fair Market Value:$115,000.00
Counsel Fee:$ 2975.00
Appraiser Fee:$ 300.00
Title Fee:$225.00
Law Day:9/17/2018, for the owner of equity of redemption, and subsequent encumbrancers in the
inverse order of their priorities.
UPON VESTING OF TITLE, THE NEW OWNER SHALL BE
ENTITLED TO POSSESSION AND MAY ENFORCE THIS
RIGHT BY EJECTMENT P.B.23-17(B)(2).

Judicial Notice (JDNO) was sent regarding this order.

406507

Judge: PATTY J PITTMAN
Processed by: Suzana Zenko